1

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI HADIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FATE THERAPEUTICS, INC., J. SCOTT WOLCHKO, and EDWARD J. DULAC III,<br><br>Defendants. | Case No. **'23CV0111 WQHNLS**<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Ali Hadian ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's

1

attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Fate Therapeutics, Inc. ("Fate" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Fate securities between April 2, 2020 and January 5, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Fate is a clinical-stage biopharmaceutical company that develops programmed cellular immunotherapies to treat cancer and immune disorders.

3.      On April 2, 2020, after the market closed, Fate announced its entry into a global collaboration and option agreement with Janssen Biotech, Inc. ("Janssen"),

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

one of the Janssen Pharmaceutical Companies of Johnson & Johnson, for cell-based cancer immunotherapies, under which Fate received a $50 million upfront payment (the "Janssen Collaboration Agreement"). In addition, Fate was eligible for up to $3 billion in various milestone payments and double-digit royalties on any net sales from the collaboration. On the news, Fate's stock price jumped 8.8% in trading on April 3, 2020.

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Janssen Collaboration Agreement was less sustainable than Fate had represented to investors; (ii) accordingly, certain the clinical programs, milestone payments, and royalty payments associated with the Janssen Collaboration Agreement could not be relied upon as future revenue sources; (iii) as a result, Fate had overstated the impact of the Janssen Collaboration Agreement's on Fate's long-term clinical and commercial profitability; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5. On January 5, 2023, after the markets closed, Fate issued a press release announcing that it had terminated the Janssen Collaboration Agreement. Specifically, the Company disclosed that it was "not able to align with Janssen on

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

their proposal for continuation of our collaboration, where two product candidates targeting high-value, clinically-validated hematology antigens were set to enter clinical development in 2023[.]"  As a result of the termination, Fate revealed that all licenses and other rights granted pursuant to the Janssen Collaboration Agreement would terminate, that it would reduce its headcount to about 220 employees in Q1 2023, and that it would discontinue several of its natural cell killer programs in various cancers, including FT516 and FT538 NK cell programs in acute myeloid leukemia, FT516 and FT596 NK cell programs in B-cell lymphoma, and FT538 and FT536 NK cell programs in solid tumors.

6.      On this news, Fate's stock price fell $6.76 per share, or 61.45%, to close at $4.24 per share on January 6, 2023.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **JURISDICTION AND VENUE**

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Fate is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Fate securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Fate is a Delaware corporation with principal executive offices located at 12278 Scripps Summit Drive, San Diego, California 92131.  Fate's securities trade in an efficient market on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "FATE".

14.     Defendant J. Scott Wolchko ("Wolchko") has served as Fate's President and Chief Executive Officer at all relevant times, and as Fate's Principal Financial officer from prior to the start of the Class Period until August 2020.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

15.   Defendant Edward J. Dulac III ("Dulac") has served as Fate's Chief Financial Officer since August 2020.

16.   Defendants Wolchko and Dulac are sometimes referred to herein as the "Individual Defendants."

17.   The Individual Defendants possessed the power and authority to control the contents of Fate's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Fate's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions with Fate, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.   Fate is a clinical-stage biopharmaceutical company that develops programmed cellular immunotherapies to treat cancer and immune disorders.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

**<u>Materially False and Misleading Statements Issued During the Class Period</u>**

19.     The Class Period begins on April 2, 2020, when Fate issued a press release announcing that it had entered into the Janssen Collaboration Agreement. The press release stated, in relevant part:

> Fate [. . .] announced today a global collaboration and option agreement with Janssen Biotech, Inc. (Janssen), one of the Janssen Pharmaceutical Companies of Johnson & Johnson.
>
> Under the multi-year collaboration agreement, Janssen will contribute proprietary antigen binding domains for up to four tumor-associated antigen targets. The Company will apply its iPSC product platform to research and preclinically develop new iPSC-derived chimeric antigen receptor (CAR) NK and CAR T-cell product candidates. The Company will receive $50 million in cash and $50 million from the purchase by Johnson & Johnson Innovation – JJDC, Inc. of newly issued shares of the Company's common stock at a price per share of $31.00. Janssen will also reimburse the Company for all activities conducted under the collaboration.
>
> "We are delighted to enter this strategic collaboration, which brings together Janssen's scientific and global commercialization leadership, deep domain expertise in oncology and proprietary technologies for targeting and binding certain tumors and our industry-leading iPSC product platform to develop novel off-the-shelf CAR NK and T-cell cancer immunotherapies," said Scott Wolchko, President and Chief Executive Officer of Fate Therapeutics. "The collaboration strengthens our financial and operating position through a focused effort of developing cell-based cancer immunotherapies utilizing Janssen's proprietary antigen binding domains, while enabling us to continue to exploit our deep pipeline of wholly-owned product candidates and further develop our off-the-shelf, iPSC-derived cell-based immunotherapies."
>
> The Company will advance candidates under the collaboration to the filing of an Investigational New Drug (IND) application, after which Janssen will have the right to exercise its option for an exclusive license

7

for the development and commercialization of collaboration candidates targeting the tumor-associated antigens. The Company will be primarily responsible for the manufacture of collaboration candidates, the cost of which will be paid for by Janssen. The Company is eligible to receive payments of up to $1.8 billion upon the achievement of development and regulatory milestones and up to $1.2 billion upon the achievement of commercial milestones, plus double-digit royalties on worldwide commercial sales of products targeting the antigens. In addition, the Company has the right to elect to co-commercialize each collaboration candidate in the U.S. and share equally in profits and losses in the U.S., subject to its payment of certain clinical development costs and adjustments in milestone and royalty payments.

20.   On the news, Fate's stock price jumped 8.8% in trading on April 3, 2020.

21.   On May 11, 2020, Fate issued a press release announcing the Company's Q1 2020 financial results and operational highlights.  The press release stated, in relevant part:

> "[W]e entered into a transformative collaboration with Janssen that leverages our iPSC product platform and Janssen's proprietary tumor-targeting antigen binders to develop novel CAR NK and CAR T-Cell product candidates for hematologic malignancies and solid tumors, supporting our fundamental goal of bringing off-the-shelf, iPSC-derived cell-based cancer immunotherapies to patients."
>
> ***
>
> **Corporate Highlights**
>
> - **Strategic Collaboration Formed with Janssen for Novel iPSC-derived Cell-based Cancer Immunotherapies**. In April, the Company entered into a global collaboration and option agreement with Janssen Biotech, Inc. (Janssen), one of the Janssen Pharmaceutical Companies of Johnson & Johnson, to develop iPSC-derived chimeric antigen receptor (CAR) NK and CAR T-cell product candidates targeting up to four tumor-

8

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

associated antigens for which Janssen is contributing proprietary antigen binding domains. The Company is eligible to receive payments of up to $3.0 billion upon the achievement of certain development, regulatory and commercial milestones, plus tiered double-digit royalties on worldwide net sales of products targeting the antigens. In addition, the Company has the right to elect to co-commercialize each product candidate in the U.S. and share equally in profits and losses in the U.S., subject to its payment of certain clinical development costs and adjustments in milestone and royalty payments. The Company received $100 million upon entering into the collaboration, including $50 million in an upfront cash payment and $50 million from the purchase by Johnson & Johnson Innovation – JJDC, Inc. of newly issued shares of the Company's common stock at a price per share of $31.00.

22.     That same day, Fate hosted an earnings call with investors and analysts to discuss the Company's Q1 2020 results (the "Q1 2020 Earnings Call").  During the scripted portion of the Q1 2020 Earnings Call, Defendant Wolchko stated, in relevant part:

Finally, I'd like to make a few comments about our newly formed collaboration with Janssen. The partnership is transformative for us. And I believe it significantly increases our ability to invest in innovation, build commercial-scale iPSC manufacturing operations, bring best-in-class iPS-derived cell-based cancer immunotherapies to patients and deliver value to shareholders. The collaboration brings together Janssen's scientific leadership in deep domain expertise in oncology and our industry-leading iPSC product platform. Our mutual objective is to research, develop and commercialize novel off-the-shelf iPS-derived CAR NK and CAR-T cell products.

\*\*\*

Importantly, all these activities are entirely funded by Janssen. And we will receive full funding for all innovation, preclinical development and the IND-enabling activities that we perform under the collaboration.

9

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Upon the completion of activities sufficient to allow for submission of an IND, Janssen will have the right to exercise an exclusive option. And obtain an exclusive license, for the clinical development and commercialization of the collaboration candidate.

Janssen will be solely responsible for worldwide clinical development and commercialization. And we will be primarily responsible for the manufacture, at Janssen's cost, of the collaboration candidate.

\*\*\*

With respect to the collaboration economics, we received $100 million in April of which $50 million was an upfront cash payment and $50 million was in the form of an equity investment at $31 per share.

\*\*\*

In total, assuming only one collaboration candidate, across each of the four antigen targets we are eligible to receive payments of up to $1.8 billion, upon the achievement of development and regulatory milestones and up to $1.2 billion, upon the achievement of commercial milestones.

\*\*\*

With respect to the collaboration's strategic value, I would highlight several key points. First, we have partnered with one of the strongest oncology teams in the entire industry, one, with outstanding scientific clinical development and commercialization expertise.

We will be building collaboration candidates using proprietary binding domains, identified and optimized by Janssen, creating the opportunity to develop highly differentiated products.

Second, Janssen has committed substantial dollars to the collaboration's work plan. And we will be receiving significant annual research and development payments to drive innovation, including for the research and development of next-generation features and functionality, and for the scaling of our GMP manufacturing processes to support commercial-scale operations.

10

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

Importantly, we retained rights to this innovation for use across our iPSC product platform. Furthermore, the collaboration represents an opportunity for us to leverage our industry-leading iPSC product platform. And expand our product pipeline. We have not encumbered our existing product pipeline, in any way whatsoever.

For each collaboration candidate, we retained significant economic interest, with the rights to opt in to co-commercialization and equal share of profits and losses in the U.S. Lastly, I would highlight that we retained responsibility for the manufacture of collaboration products.

Under the collaboration we have formed a joint manufacturing committee, where Janssen can provide advice and support for our activities, in building and scaling a world-class cell therapy manufacturing operation.

23.     On August 5, 2020, Fate issued a press release announcing the Company's Q2 2020 financial results and operational highlights.  The press release stated, in relevant part, "we successfully launched our Janssen collaboration with strong momentum, bringing together Janssen's proprietary tumor-targeting antigen binders and our industry-leading iPSC product platform to develop novel off-the-shelf CAR NK and CAR T-cell immunotherapies for hematologic malignancies and solid tumors."

24.     That same day, Fate hosted an earnings call with investors and analysts to discuss the Company's Q2 2020 results (the "Q2 2020 Earnings Call").  During the scripted portion of the Q2 2020 Earnings Call, Defendant Wolchko stated, in relevant part:

And we're informing and launching a transformative partnership with Janssen, bringing together our industry-leading iPSC product platform

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

with Janssen's proprietary tumor targeting antigen binders to develop novel off-the-shelf CAR NK and CAR T-cell immunotherapies for both hematologic malignancies and solid tumors.

\*\*\*

We are also leveraging our unique ability to build multiplexed engineered cell products of increasing complexity, using already established clonal master engineered iPSC lines with our collaboration partners, including under our newly formed collaboration with Janssen, which brings together Janssen's deep domain expertise in oncology and our industry-leading iPSC cell product platform.

We have successfully launched this collaboration with strong momentum. Janssen has already contributed proprietary antigen-binding domains against one hematologic malignancy target and one solid tumor target, for which we are building novel CAR constructs. As a first step, we are incorporating these constructs into existing multiplex engineered master iPSC cell lines, which may enable an efficient and accelerated pathway to clinical development for the collaboration's initial product candidates.

\*\*\*

Turning to our financial results. Revenue was $5.5 million for the second quarter of 2020 compared to $2.8 million for the same period last year. Revenue in the current quarter was derived from our collaboration with Janssen and ONO Pharmaceutical.

25.     On November 5, 2020, Fate issued a press release announcing the Company's Q3 2020 results which stated, in relevant part, that "[r]evenue was $7.6 million for the third quarter of 2020, which was derived from the Company's collaborations with Janssen and Ono Pharmaceutical."

26.     On February 24, 2021, Fate filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

December 31, 2020 (the "2020 10-K").  With respect to the Company's strategy, the 2020 10-K stated, in relevant part:

- **Selectively share our iPSC product platform with industry-leading strategic partners for the development of iPSC-derived cell therapies**. The research, development and clinical investigation of cell therapies for the treatment of human diseases is rapidly expanding. We believe we are uniquely positioned as an expert partner of choice for industry-leading developers seeking to develop iPSC-derived cell therapies for the treatment of human diseases, including cancer. For example, we are collaborating with Ono Pharmaceutical Co. Ltd. (Ono) to develop and commercialize off-the-shelf, iPSC-derived CAR T-cells for the treatment of certain solid tumors, *and we are collaborating with Janssen Biotech, Inc. (Janssen), part of the Janssen Pharmaceutical Companies of Johnson & Johnson, to develop and commercialize off-the-shelf, iPSC-derived CAR NK cell and CAR T-cell product candidates for the treatment of certain hematologic malignancies and solid tumors*. Since iPSCs have the unique capacity to be genetically engineered, indefinitely expanded and differentiated in culture into any type of cell in the body, we believe there is significant opportunity to broadly exploit our industry-leading iPSC product platform and intellectual property position in other disease areas beyond cancer. We will continue to seek partnerships with institutions and companies for the research, development and commercialization of iPSC-derived cell therapies for the treatment of human diseases.

(Emphasis added.)

27.    Appended to the 2020 10-K as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that "the information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of [Fate]."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

28.     That same day, Fate issued a press release announcing the Company's Q4 and full year 2020 financial results and operational progress.  The press release stated, in relevant part:

> "2020 was a pivotal year for Fate Therapeutics. We demonstrated the clinical safety and therapeutic activity of engineered iPSC-derived NK cell therapy as patients with relapsed / refractory lymphoma achieved objective responses across our FT516 and FT596 Phase 1 studies. We successfully worked with the FDA to enable clinical investigation of FT538, the first-ever CRISPR-edited, iPSC-derived cell therapy, and FT576, the first-ever cell therapy engineered with four functional anti-tumor modalities, in patients with multiple myeloma. ***We also made strong progress with our strategic partners, Ono Pharmaceutical and Janssen, in leveraging the unique advantages of our iPSC product platform to advance multiplexed-engineered CAR NK and CAR T-cell product candidates toward clinical development for solid tumors***," said Scott Wolchko, President and Chief Executive Officer of Fate Therapeutics. "We look forward to a promising 2021 where we expect to have clinical read-outs across our programs, treat patients with the first-ever iPSC-derived CAR T-cell therapy, submit IND applications for two iPSC-derived CAR NK cell programs targeting novel antigens in solid tumors, and open our second cGMP manufacturing facility for an additional 40,000 square feet of capacity."
>
> ***
>
> - **Total Revenue**: Revenue was $15.9 million for the fourth quarter of 2020, which was derived from the Company's collaborations with Janssen and Ono Pharmaceutical.

(Emphasis added.)

29.     On that same day, Fate also hosted an earnings call with investors and analysts to discuss the Company's Q4 2020 results (the "Q4 2020 Earnings Call").

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

During the scripted portion of the Q4 2020 Earnings Call, Defendant Wolchko stated, in relevant part:

> We also continued to innovate and optimize our manufacturing process, including under our collaborations with ONO and Janssen and we have initiated a second GMP manufacturing run of FT819 to implement certain improvements. We expect to treat the first patients with FT819 in the middle of 2021.
>
> ***
>
> And finally, we believe our iPSC product platform represents the ideal framework for designing and developing multiplex engineered CAR NK cell product candidates. And we currently have four novel IPS derived CAR NK cell programs for solid tumors undergoing preclinical development. These programs include three wholly-owned programs and one program under our collaboration with Janssen.

30.    On May 5, 2021, Fate issued a press release announcing the Company's Q1 2021 financial results and operational highlights.  The press release stated, in relevant part, that "[r]evenue was $11.1 million for the first quarter of 2021, which was derived from the Company's collaborations with Janssen and Ono Pharmaceutical."

31.    On August 4, 2021, Fate issued a press release announcing the Company's Q2 2021 financial results and operational highlights.  The press release stated, in relevant part:

- **Preclinical Milestone Reached for First Product Candidate under Janssen Collaboration**. In June, the Company and Janssen elected to initiate IND-enabling activities for an iPSC-derived CAR NK cell product candidate incorporating a Janssen proprietary antigen binding domain that targets an antigen

15

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

expressed on certain solid tumors, triggering the payment of a milestone fee to the Company from Janssen under the collaboration. Janssen maintains an option to develop and commercialize the iPSC-derived CAR NK cell product candidate in all territories of the world, with the Company retaining the option to co-commercialize the product candidate in the United States.

\*\*\*

- **Total Revenue**: Revenue was $13.4 million for the second quarter of 2021, which was derived from the Company's collaborations with Janssen and Ono Pharmaceutical.

32.     On November 4, 2021, Fate hosted an earnings call with investors and analysts to discuss the Company's Q3 2021 results (the "Q3 2021 Earnings Call"). During the scripted portion of the Q3 2021 Earnings Call, Defendant Dulac stated, in relevant part, that "revenue was $14.2 million for the third quarter of 2021 compared to $7.6 million for the same period last year. Revenue in the current quarter was derived from our collaborations with Janssen and Ono Pharmaceutical."

33.     In addition, during the Q&A portion of the Q3 2021 Earnings Call, when asked to discuss the status of the collaboration with Janssen, Defendant Wolchko responded, in relevant part:

> [T]he Janssen collaboration has continued to go very well. And obviously, as you can tell from the revenue that continues to increase, we continue to increase the resources under the collaboration. I think we've disclosed in the past that the collaboration started with two antigen targets, one in hematologic malignancies, one in solid tumors.
>
> A third antigen target has now been added to the collaboration. And Janssen reserves the right to add a fourth target to the collaboration. So,

16

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

collaboration is moving forward. We're really pleased with it. I think we'll be able to give a little bit of visibility on the first product candidate at the solid tumor day, although we may not be able to disclose the target quite yet.

34.    On February 28, 2022, Fate filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2021 (the "2021 10-K").  The 2021 10-K contained a substantively similar description of the Janssen Collaboration Agreement's impact on the Company's strategy as discussed, *supra*, in ¶ 26.  Appended to the 2021 10-K as exhibits were signed certifications pursuant to the SOX by the Individual Defendants, attesting that "the information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of [Fate]."

35.    That same day, Fate issued a press release announcing the Company's Q4 and full year 2021 financial results and operational progress.  The press release stated, in relevant part:

- **Preclinical Milestone Reached for Second Product Candidate under Janssen Collaboration**. In January 2022, Janssen elected to initiate IND-enabling activities for a second iPSC-derived CAR NK cell product candidate incorporating a Janssen proprietary antigen binding domain, triggering the payment of a milestone fee to the Company under the collaboration.

\*\*\*

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- **Total Revenue**: Revenue was $17.1 million for the fourth quarter of 2021, which was derived from the Company's collaborations with Janssen and Ono Pharmaceutical.

36.     On May 4, 2022, Fate issued a press release announcing the Company's Q1 2022 financial results and operational highlights.  The press release stated, in relevant part:

> "We are also poised to treat the first solid tumor patient with FT536, our multi-antigen targeted CAR MICA/B NK cell product candidate, and have initiated IND-enabling activities for two CAR NK cell product candidates under our collaboration with Janssen. We look forward to providing clinical updates for our multiplexed-engineered, iPSC-derived NK and T-cell product candidates across our disease franchises in the second half of 2022."
>
> ***
>
> - **Preclinical Milestone Reached for Third Product Candidate under Janssen Collaboration**. In April 2022, Janssen nominated a third iPSC-derived, CAR-targeted cell product candidate incorporating a Janssen proprietary antigen binding domain, triggering the payment of a milestone fee to the Company under the collaboration.
>
> ***
>
> - **Total Revenue**: Revenue was $18.4 million for the first quarter of 2022, which was derived from the Company's collaborations with Janssen and Ono Pharmaceutical.

37.     That same day, Fate hosted an earnings call with investors and analysts to discuss the Company's Q1 2022 results (the "Q1 2022 Earnings Call").  During the scripted portion of the Q1 2022 Earnings Call, Defendant Wolchko stated, in relevant part:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Turning to our collaborations with Janssen and Ono. We continue to show strong momentum in bringing multiplexed-engineered iPS-derived CAR NK and CAR T cell product candidates to patients for the treatment of hematologic malignancies and solid tumors. Under our collaboration with Janssen, we have now initiated IND-enabling activities for two iPS-derived CAR NK cell collaboration candidates. And we are actively working together with Janssen to prepare and submit IND applications for both of these candidates.

For each of these collaboration candidates, Janssen maintains the option subject to its payment of an option fee prior to IND submission to initiate worldwide clinical development. We maintain the right in the U.S. alongside Janssen to co-commercialize and share equally in profits and losses of each collaboration candidate. As a reminder, under our collaboration, Janssen has the right to designate and contribute novel binding domains targeting up to four tumor-associated antigens. Janssen has now designated and contributed novel binding domains targeting three antigens. And we have now successfully achieved preclinical milestones for collaboration candidates targeting all three antigens.

\*\*\*

We are very pleased with the success we have achieved with Janssen and Ono in developing multiplexed-engineered iPS-derived CAR NK and CAR T cell product candidates for both liquid and solid tumors. And we are now poised to achieve significant milestones in connection with option exercised by Janssen and Ono over the course of the next three to six months.

38.     In addition, during the scripted portion of the Q1 2022 Earnings Call, Defendant Dulac stated, in relevant part, "[i]n the first quarter of this year, our collaboration revenue derived from our partnerships with Janssen and Ono Pharmaceutical increased by $7.3 million to $18.4 million compared to $11.1 million for the same period last year."

19

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

39.    On August 3, 2022, Fate issued a press release announcing the Company's Q2 2022 financial results and operational highlights.  The press release stated, in relevant part:

> "[W]e continue to drive our collaborations with Janssen and Ono with strong momentum, and are well positioned to achieve significant milestones and advance three multiplexed-engineered, CAR-targeted cell collaboration candidates into clinical development over the next 12 months."
>
> ***
>
> **Janssen Collaboration Highlights**
>
> - **Clinical Development Option Exercised for First Antigen Program**. In May, Janssen exercised its commercial option for an iPSC-derived CAR NK cell collaboration product targeting an antigen expressed on certain hematologic malignancies, triggering a milestone payment to the Company. The Company expects to submit its first IND application under the collaboration during the second half of 2022. Pursuant to its commercial option exercise, Janssen has an exclusive license for development and commercialization of the product candidate, and the Company is eligible to receive clinical, regulatory, and commercial milestones, plus double-digit royalties on worldwide commercial sales of the product candidate. In addition, the Company retains the right to elect to co-commercialize, and share equally in profits and losses, in the United States, subject to its payment of certain clinical development costs and adjustments in milestone and royalty payments.
>
> - **Preclinical Development Ongoing for Two Additional Antigen Programs**. The Company and Janssen are also conducting preclinical development of a second iPSC-derived, CAR-targeted cell candidate for an antigen expressed on certain hematologic malignancies and a third iPSC-derived, CAR-targeted cell candidate for an antigen expressed on solid tumors. In addition, during the second quarter, Janssen selected a solid

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2

tumor-associated antigen as its fourth and final program for initiation of candidate development.

3

40.    That same day, Fate hosted an earnings call with investors and analysts

4
5

to discuss the Company's Q2 2022 results (the "Q2 2022 Earnings Call").   During

6

the scripted portion of the Q2 2022 Earnings Call, Defendant Wolchko stated, in

7

relevant part:

8
9
10
11
12
13
14
15
16
17
18
19

During the second half of 2022, we expect to present new preclinical data for our ADR technology and highlight its integration into a next-generation NK cell product candidate. Turning to our collaborations with Janssen and Ono. We continue to show strong momentum in bringing multiplexed engineered IPS-derived CAR NK and CAR-T cell collaboration programs to patients for the treatment of hematologic malignancies and solid tumors. And we are reaching key inflection points where multiple candidates are poised to advance towards IND submission. Under our collaboration with Janssen, entered into in April 2020, Janssen designated and contributed novel binding domains targeting 4 tumor-associated antigen programs, two of which are directed to hematologic malignancies and two of which are directed to solid tumors. Jansen maintains the option, subject to its payment of an option exercise fee prior to IND submission to initiate worldwide clinical development of and to commercialize collaboration products under each antigen program.

20
21
22
23
24
25

We maintain an opt-in right to co-commercialize and share equally in profits and losses of collaboration products in the U.S. under each antigen program. In May, Janssen exercised its option on a first antigen program, triggering a $10 million payment to fee, and we have now advanced a second antigen program to the stage of option exercise decision. We are currently working with Janssen to prepare and submit 2 IND applications: one for each of these two antigen programs for off-the-shelf iPS-derived CAR NK cell collaboration products.

26

***

27
28

21

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

We are very pleased with the success we've achieved with Janssen and Ono in developing multiplexed engineered IPS-derived CAR NK and CAR-T cell product candidates for both liquid and solid tumors. We are poised to achieve significant milestones in connection with option exercises by Janssen and Ono and advance multiple collaboration products toward IND submission over the next 6 months.

41.     In addition, during the scripted portion of the Q2 2022 Earnings Call, Defendant Dulac stated, in relevant part, "[i]n the second quarter of this year, our collaboration revenue derived from our partnerships with Janssen and Ono Pharmaceutical increased by $5.1 million to $18.5 million compared to $13.4 million for the same period last year."

42.     On November 3, 2022, Fate issued a press release announcing the Company's Q3 2022 financial results and operational highlights which stated, in relevant part, that "[r]evenue was $15.0 million for the third quarter of 2022, which was derived from the Company's collaborations with Janssen and ONO."   In addition, the press release stated, in relevant part:

> "[U]nder our collaboration with Janssen, we are pleased to announce our first IND candidate FT555, a multiplexed-engineered, iPSC-derived CAR NK cell targeting GPRC5D for multiple myeloma, and that Janssen has also exercised its commercial option to an additional product candidate targeting an undisclosed hematologic malignancy antigen."

***

***Janssen Collaboration Highlights***

- **FT555 IND Candidate from GPRC5D Antigen Program for MM to be Presented at ASH**. In May, Janssen exercised its

commercial option to FT555, a multiplexed-engineered, iPSC-derived CAR NK cell product candidate targeting GPRC5D, a tumor-associated orphan G-protein-coupled receptor found to be highly expressed on myeloma cells. The companies will jointly present preclinical data at ASH demonstrating that administration of FT555 resulted in robust tumor growth inhibition in vivo in a disseminated xenograft mouse model comprised of engrafted MM.1S cells, and that the durability of tumor growth inhibition as well as survival were further enhanced in combination with daratumumab to simultaneously co-target GPRC5D and CD38 antigens.

- **Commercial Option Exercised for Second Hematologic Malignancy Product Candidate**. In September, Janssen exercised its commercial option, subject to Hart-Scott-Rodino regulatory clearance, to a second multiplexed-engineered, iPSC-derived CAR NK cell product candidate, which targets an undisclosed antigen expressed on certain blood cancers. The Company expects to submit an IND application for the product candidate under the collaboration during the fourth quarter of 2022.

- **Preclinical Development Ongoing for Two Solid Tumor Antigen Programs**. The companies will jointly present preclinical data at SITC of an iPSC-derived CAR T-cell program targeting human kallikrein-related peptidase 2 (KLK2), an antigen with prostate-restricted expression that is maintained during prostate cancer progression. Preclinical data demonstrate that iPSC-derived CAR T cells targeting KLK2 have the potential to infiltrate the tumor mass and eliminate tumor cells in a highly-selective manner and to prolong survival in xenograft models of prostate cancer. In addition, during the third quarter, Janssen selected an undisclosed solid tumor-associated antigen as its fourth and final antigen program for initiation of product candidate development.

43. On November 12, 2022, Fate gave a presentation to investors concerning its programmed cellular immunotherapies for treating cancer. In the

23

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

presentation, Fate touted the Janssen Collaboration Agreement, including highlighting (i) Janssen's affiliation with Johnson & Johnson, and (ii) the "Significant Economics" of the Agreement, including "Janssen pays for all collaboration costs," and "$3+ billion in milestones, double-digit royalties."

44.    On December 10, 2022, Fate issued a press release entitled "Fate Therapeutics Highlights iPSC-derived, Off-the-shelf CAR NK Cell Programs for Multiple Myeloma at 2022 ASH Annual Meeting." The press release stated, in relevant part:

***Preclinical Data under Janssen Collaboration with FT555 GPRC5D-targeted Product Candidate Demonstrate Robust and Durable Tumor Clearance in Highly Aggressive Myeloma Model***

\*\*\*

***FT555 GPRC5D-targeted CAR NK Cell Program***
Under its collaboration with Janssen Biotech, Inc. (Janssen), one of the Janssen Pharmaceutical Companies of Johnson & Johnson, the Company is currently conducting preclinical development of FT555, a multiplexed-engineered CAR NK cell product candidate derived from a clonal master engineered iPSC line incorporating four functional components: a proprietary CAR optimized for NK cell biology that targets GPRC5D, an orphan G-protein-coupled receptor expressed on myeloma cells with a distribution that is similar to but independent of BCMA; a novel hnCD16 Fc receptor for enhanced ADCC; an IL-15 receptor fusion (IL-15RF) that augments NK cell activity; and the deletion of the CD38 gene (CD38KO), which promotes persistence and function in high oxidative stress environments.

At ASH, scientists from the companies jointly presented preclinical data demonstrating that single-dose administration of FT555 as monotherapy resulted in robust and durable antigen-mediated tumor regression in two independent disseminated tumor models of

24

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

aggressive myeloma, which activity was further improved in combination with daratumumab to simultaneously target GPRC5D and CD38 antigens. Administration of three doses of FT555 as monotherapy further improved tumor clearance and showed superior activity compared to single-dose primary CAR T cells.

In May 2022, Janssen exercised its commercial option to FT555, pursuant to which the Company granted Janssen an exclusive license for development and commercialization of FT555. The Company is eligible to receive clinical, regulatory, and commercial milestones, plus double-digit royalties on worldwide commercial sales of the product candidate. In addition, the Company retains the right to elect to co-commercialize, and share equally in profits and losses, in the United States, subject to its payment of certain clinical development costs and adjustments in milestone and royalty payments.

45.     The statements referenced in ¶ 19 and ¶¶ 21-44 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Janssen Collaboration Agreement was less sustainable than Fate had represented to investors; (ii) accordingly, certain the clinical programs, milestone payments, and royalty payments associated with the Janssen Collaboration Agreement could not be relied upon as future revenue sources; (iii) as a result, Fate had overstated the impact of the Janssen Collaboration Agreement's on Fate's long-term clinical and commercial profitability; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

## The Truth Emerges

46.     On January 5, 2023, after the markets closed, Fate issued a press release

announcing that it had terminated the Janssen Collaboration Agreement.

Specifically, the press release stated, in relevant part:

> Fate [. . .] announced today that it has declined a proposal from Janssen
> Biotech, Inc. ("Janssen") for continuation of the collaboration and
> option agreement between the parties on revised terms and conditions
> and, as a result, the agreement has been terminated and all collaboration
> activities will be wound down in the first quarter of 2023. In addition,
> the Company has completed a strategic review of its natural killer (NK)
> cell product pipeline and has elected to focus on advancing its most
> innovative and differentiated programs, which have a multiplexed-
> engineered cellular framework of novel synthetic controls designed to
> promote multi-antigen targeting, increase potency, extend functional
> persistence, and enable patient dosing with reduced conditioning
> chemotherapy. The Company ended the fourth quarter with
> approximately $475 million in cash, cash equivalents, and receivables
> and, based on its pipeline prioritization and expense reduction, the
> Company expects to have sufficient financial resources through the end
> of 2025 to capitalize on its iPSC-derived chimeric antigen receptor
> (CAR) NK and CAR T-cell programs.
>
> "We are disappointed that we were not able to align with Janssen on
> their proposal for continuation of our collaboration, where two product
> candidates targeting high-value, clinically-validated hematology
> antigens were set to enter clinical development in 2023," said Scott
> Wolchko, President and Chief Executive Officer of Fate Therapeutics.
> "As a consequence, in keeping with the Company's commitment to
> develop disruptive product candidates, programs and technologies with
> the potential to address large, unmet clinical needs, we have prioritized
> our clinical programs and substantially reduced operating expenses,
> including taking the difficult and painful step of reducing our
> workforce, to ensure that we have a three-year cash runway. We are
> greatly saddened to move in this direction as our employees have
> continually demonstrated the highest level of dedication and
> commitment in pioneering iPSC-derived cell therapy for patients with

26

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

cancer. I want to extend my deepest appreciation to all of our employees for their tremendous efforts and wish those employees who will be departing great success in the future."

\*\*\*

***Wind Down of Janssen Collaboration***
During the fourth quarter of 2022, the FDA allowed an IND application for a first collaboration product for the treatment of B-cell lymphoma, for which the Company expects to receive a $3 million milestone payment, and Janssen exercised its second commercial option for a collaboration product, for which the Company expects to receive a $10 million milestone payment. As a result of the collaboration's termination, during the first quarter of 2023, the Company will wind down its activities with Janssen, including discontinuing development of all collaboration products, at the expense of Janssen. As a result of such termination, all licenses and other rights granted pursuant to the agreement terminate; neither party has any right to continue to develop, manufacture or commercialize any collaboration product or use the other party's materials; and neither party is restricted from independently developing, manufacturing, or commercializing any product, including any product directed to any antigen targeted by a collaboration product.

47.    On this news, Fate's stock price fell $6.76 per share, or 61.45%, to close at $4.24 per share on January 6, 2023.

48.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

purchased or otherwise acquired Fate securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Fate securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Fate or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Fate;

- whether the Individual Defendants caused Fate to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Fate securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

55.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Fate securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Fate securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

56.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as

30

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

58.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Fate securities; and (iii) cause Plaintiff and other

31

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

members of the Class to purchase or otherwise acquire Fate securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Fate securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Fate's finances and business prospects.

62.    By virtue of their positions at Fate, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Fate, the Individual Defendants had knowledge of the details of Fate's internal affairs.

64.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Fate.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Fate's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Fate securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Fate's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Fate securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

65.     During the Class Period, Fate securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Fate securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Fate securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Fate securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

68.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     During the Class Period, the Individual Defendants participated in the operation and management of Fate, and conducted and participated, directly and indirectly, in the conduct of Fate's business affairs.  Because of their senior positions, they knew the adverse non-public information about Fate's misstatement of income and expenses and false financial statements.

70.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Fate's financial condition and results of operations, and to correct promptly any public statements issued by Fate which had become materially false or misleading.

71.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Fate disseminated in the marketplace during the Class Period concerning Fate's results of operations.  Throughout the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Class Period, the Individual Defendants exercised their power and authority to cause Fate to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Fate within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Fate securities.

72.    Each of the Individual Defendants, therefore, acted as a controlling person of Fate. By reason of their senior management positions and/or being directors of Fate, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Fate to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Fate and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Fate.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  January 20, 2023                    Respectfully submitted,

                                                              POMERANTZ LLP

                                                              */s/ Jennifer Pafiti*
                                                              Jennifer Pafiti (SBN 282790)
                                                              1100 Glendon Avenue, 15th Floor
                                                              Los Angeles, California 90024
                                                              Telephone: (310) 405-7190
                                                              jpafiti@pomlaw.com

                                                              POMERANTZ LLP
                                                              Jeremy A. Lieberman
                                                              (*pro hac vice* application
                                                              forthcoming)
                                                              J. Alexander Hood II
                                                              (*pro hac vice* application
                                                              forthcoming)
                                                              600 Third Avenue, 20th Floor
                                                              New York, New York 10016
                                                              Telephone: (212) 661-1100
                                                              Facsimile: (917) 463-1044

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

jalieberman@pomlaw.com
ahood@pomlaw.com

WOHL & FRUCHTER LLP
Joshua E. Fruchter
(*pro hac vice* application
forthcoming)
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Ali Hadian, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Fate Therapeutics, Inc. ("Fate") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Fate securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Fate securities during the Class Period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Fate securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

DocuSign Envelope ID: BADCD549-C68A-4171-81A0-AA0195A1B516

8.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

1/10/2023

**Executed** _____

**(Date)**

_____

Ali Hadian

**Fate Therapeutics, Inc. (FATE)**                                                    **Ali Hadian**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 10/13/2021 | 21.3320 | $60.0600 |
| Purchase | 1/10/2022 | 0.0777 | $49.0900 |
| Purchase | 1/10/2022 | 28.0000 | $49.0200 |
| Purchase | 1/10/2022 | 0.3280 | $46.8300 |
| Purchase | 1/10/2022 | 7.0000 | $46.8200 |
| Purchase | 1/14/2022 | 22.0000 | $43.4300 |
| Purchase | 1/14/2022 | 0.9850 | $43.4200 |
| Purchase | 1/24/2022 | 0.6060 | $35.0000 |
| Purchase | 1/24/2022 | 28.0000 | $35.0000 |
| Purchase | 2/17/2022 | 0.4260 | $33.9900 |
| Purchase | 2/17/2022 | 20.0000 | $34.0000 |
| Purchase | 8/4/2022 | 0.9700 | $30.3400 |
| Purchase | 8/4/2022 | 23.0000 | $30.3700 |